IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD E. GILLETTE,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. AS TRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>                                    / | No. C 08-02377 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this social security action, plaintiff appeals his denial of disability benefits. This order finds that the administrative law judge exercised proper discretion in weighing the testimony on record and that his conclusion was supported by substantial evidence. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**STATEMENT**

**1. PROCEDURAL HISTORY.**

On April 19, 2005, plaintiff Ronald Gillette applied for disability insurance benefits and on May 17, he applied for supplemental security income. He alleged that he was unable to

work for a closed period of disability from April 2004[1] to January 2006 due to prostate cancer, a pinched nerve in the neck, and musculoskeletal problems (AR 42). Plaintiff was insured through December 31, 1997. His application was denied both initially and upon reconsideration (*id*. at 35, 42). An administrative hearing was timely requested (*id*. at 16).

On May 24, 2007, plaintiff had a hearing before administrative law judge F. Neil Aschemeyer (*id*. 380–405). The ALJ rendered a decision on June 27 finding that plaintiff was not disabled (*id*. at 19). Plaintiff requested administrative review (*id.* at 11). The Appeals Council denied the request (*id*. at 4). Plaintiff filed an action before this Court on March 27, 2008, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, plaintiff testified that when he applied for social security benefits in April 2005 he couldn't work because he "just didn't have the energy," he "didn't feel good," and he was "listless." He attributed his fatigue to radiation treatment that he had received in 2004 for his prostate cancer. "They said it could last up to 18 months, sometimes 23 months depending on the person's ability to recover from the radiation." He also testified that he had a "lot of burning and a lot of discomfort" in his abdomen "right around where" he had the radiation treatment. Plaintiff testified that he "didn't have the energy . . . to perform the old duties." "I couldn't perform the old duties that I use to, you know, the old work I use to do anyway."

Plaintiff was diagnosed with prostate cancer while he was incarcerated. His first radiation treatment was in July 2004. He spent five months in the radiation treatment center or in the hospital. His radiation treatment lasted six weeks. Plaintiff was released from prison on April 15, 2005.

---

[1] Plaintiff initially claimed his disability period began May 1, 1994, but he later amended that date. Plaintiff was actually only eligible for disability benefits after April 15, 2005, when he was released from prison.

2

Plaintiff testified that his condition and symptoms started to slowly improve when he returned to work in January 2006. He stated that he felt that he could continue to work and that in the future he would be able to do so.

Plaintiff also testified that he had pain in his lower back and a pinched nerve in his neck. He stated that his pinched nerve made most of his left thumb numb. He said that those symptoms had "been ongoing for quite a few years" and that they had "always" caused him problems. In addition, plaintiff testified that he broke his shoulder three weeks before the hearing. Prior to that, his shoulder was dislocated and it "kept falling out of socket," preventing plaintiff from doing work that he use to do. He said that he had problems with both shoulders, but his left shoulder was the worst. When asked whether he still had the same neck pain and shoulder pain that was present three to five years ago, plaintiff stated that he did.

Plaintiff testified that his shoulder problems limited him to lifting no more than five to ten pounds. He said that he didn't think that there was any job he could have done from the time he was released from prison to the time he began working again. He also said that he could perform some duties, such as "cleaning up," with "some pain involved." He testified that he worked as a substance abuse counselor, the same job he had since January 2006 when he resumed working.

Plaintiff summarized that his biggest health problem was the combination of the radiation side effects and the shoulder, back, and neck pains. He testified that his cancer was in remission.

In addition, plaintiff testified about a visit to Dr. Badrinath Konety in October of 2006. Plaintiff saw the doctor for erectile dysfunction. He also told the doctor about his fatigue and other symptoms. Plaintiff also discussed his physical problems, other than the erectile dysfunction, with Dr. Daniels and Dr. Mack Roach. He saw Dr. Daniels about six weeks prior to the hearing. Plaintiff testified that the doctor did not prescribe any new medications for him, but that he wanted plaintiff to do therapy for his back and shoulders. Plaintiff testified that he had been "more or less" stable since his radiation therapy.

Plaintiff also testified about his past employment as a garden worker. His title was "supervisor." He had a crew of about twelve teenagers. They did landscaping projects, pulled weeds, and cleaned up. He was a "working supervisor." When asked whether he performed "the full range of activities that the people that you supervised performed," he answered that he "demonstrated what I wanted done and they did the rest of the work themselves." He also said that he was not responsible for hiring and firing. He testified that this was the only work in the past that he had performed in fifteen years.

### 3.  MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (*id*. at 16–18). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined him.

Plaintiff received treatment while he was incarcerated from 1997 to 2005, primarily at the Taft Correctional Institute by multiple doctors. Upon his release, plaintiff was primarily treated at the UCSF Medical Center, also by multiple doctors.

In 2000, plaintiff was diagnosed with degenerative spondylosis at C5-C6 and C6-C7 (*id*. at 264). Later that year, Dr. Ronald Wilson noted that plaintiff had a history of neck pain with tingling in the second, third, and fourth finger tips of his left hand. He also wrote that plaintiff was "26% disabled after injuring his neck at work on the street. He also sustained a neck injury in a motor vehicle accident some years ago. He has few symptoms except the tingling in his hands. He is well otherwise" (*id*. at 203). The disability comment appears to refer to plaintiff self-reporting that he was "28% state disability before incarceration" (*id*. at 205). Indeed, Dr. Wilson noted later in his comments that plaintiff "looks well, no apparent disability" (*id*. at 204). A physician assistant noted "MDS issued [unintelligible] heavy lifting over 10 lbs (indefinite) as agreed by Dr. Wilson" (*id*. at 196). Plaintiff interprets this to mean that Dr. Wilson restricted plaintiff from lifting over 10 lbs. indefinitely. Defendant does not contest this interpretation.

In August 2001, plaintiff saw Dr. V. Chakmakian. Plaintiff reported problems with two discs in his neck and a pinched nerve. He also reported that his right knee "goes out." He made

4

a request for a lower bunk. The doctor's notes indicated that "patient stated problems since 1994." He also stated that "lower bunk will improve situation" (*id*. at 182). Dr. Steven Sonnabend diagnosed plaintiff with mild AC-joint degenerative disc disease (*id*. at 263).

In 2002, plaintiff reported a rotator cuff injury and a pinched nerve between his fourth and fifth vertebrae. He was not cleared for kitchen or barber shop duty (*id*. at 164). Dr. Robert Spack noted that plaintiff had a pinched nerve in the left side of his neck and that a finger on his left hand had become numb. The doctor also noted that plaintiff had pain at level 7 on a 10-point scale and that the pain woke him up at nights (*id*. at 156).

In 2003, Dr. Ndukwe Odeluga found that plaintiff had a reduced range of motion in his shoulders and that a December 2001 MRI indicated that he had "degenerative spondylosis and mild foraminal at C6-7." He also made a notation, which is mostly unintelligible, about plaintiff's "lateral index finger." He prescribed Naprosin (*id*. at 140).

In 2004, plaintiff was instructed to avoid heavy lifting. Plaintiff claims that Dr. Jonathon Akkano gave the instruction, but the record is not clear as to which doctor did (*id*. at 129). Later that year, plaintiff was diagnosed with prostate cancer (*id*. at 124). He underwent radiation treatment. Plaintiff was given a "care level 4" on an intake screening questionnaire that contained "initial orders." "Care level 4" indicated that the inmate "requires subacute/long-term inpatient care, medically complex patient." The form was stamped by a physician assistant (*id*. at 116). Plaintiff's medical records noted that he had aggravated pain with heavy lifting. Plaintiff claims the observation was made by Dr. Akkano, but the record is not clear who made the observation (*id*. at 108). In July, plaintiff complained of numbness in his left hand in the first and third digits (*id*. at 105). In October, plaintiff reported that he had a seizure disorder. No further explanation was given (*id*. at 94). In November, Dr. Akkano noted that plaintiff still had pain in his neck and left shoulder and that he had occasional numbness in his left hand (*id*. at 155).

In January 2006, plaintiff underwent a physical therapy screening evaluation. He reported that he had constant pain at an intensity of level 4 on a 10-point scale. He also reported that the pain was worst in the morning with an intensity of 8. Plaintiff was enrolled

5

in a spine class and he was given a home exercise program. The evaluation stated that plaintiff had "good" potential for rehabilitation (*id*. 317–18). Also, Dr. Gary Fleischner found that plaintiff had myofascial pain syndrome of the left upper buttock, "mechanical stress." He gave plaintiff an injection which made him feel better. The doctor also noted plaintiff's back and shoulder pain, noting the pain was worse overhead. The doctor suggested shoulder injections and ordered an MRI C-spine (*id*. at 308–09). In April, an MRI revealed no evidence of metastatic disease or no significant degenerative change or finding suggestive of metastatic disease within the lumbar spine (*id.* at 361).

In June, Dr. Shane Burch found "no indication of metastatic disease of spine." He also noted that plaintiff "does continue with the left-sided thumb and forefinger numbness, as well as some mild weakness in the wrist flexor and extensor which would go along with the findings seen on cervical MRI with foraminal narrowing at C5-C6 and C6-C7" (*id*. at 372). Also, Dr. Roach found that plaintiff was "status post radiotherapy for presumed early prostate cancer, however a less than optimal PSA [prostate-specific antigen] response." He recommended to repeat PSA and return for follow-up in three months (*id*. at 297). Dr. Daniels referred plaintiff to a spine clinic (*id*. at 356). In October, Dr. Daniels noted that plaintiff had back pain and that he needed to visit the spine clinic. He also noted that plaintiff needed to see the oncology department (*id*. at 371). In October, Dr. Konety diagnosed plaintiff with erectile dysfunction (*id*. at 349–50). In December, Dr. Daniels noted that plaintiff had "recent exposure to TB." The doctor's notes also indicated that he was "off work [unintelligible] cleared." Plaintiff asserts that the note said "off work till cleared." Defendant does not dispute this interpretation. No further explanation was given (*id*. at 342).

In February 2007, plaintiff reported to Dr. Daniels that he was easily fatigued after walking one block. Dr. Daniels prescribed rest and that plaintiff should be "off work rest of week" (*id*. at 330–31). The doctor treated plaintiff for pneumonia in May (*id*. at 324). An x-ray of his left humerus that month showed "spurring of the humeral head" and a "suggestion of narrowing of glenohumeral joint." The radiologist also noted that there was "no evidence for

6

shoulder dislocation" (*id*. at 321).  Dr. Daniels prescribed Ambien for plaintiff (*id*. at 345).  He also prescribe Marinol (*id*. at 351).

# ANALYSIS

### 1.     LEGAL STANDARD.

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.*  The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

An ALJ evaluates disability claims using a five-step inquiry.  20 C.F.R. 404.1520. In the first four steps, the burden of proof lies with the claimant. *Andrews*, 53 F.3d at 1040. Based upon the claimant's proffered proof, the ALJ must determine: (i) whether the claimant is working; (ii) the medical severity and duration of the claimant's impairment; (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4; and (iv) whether the claimant is capable of performing his or her previous job.  20 C.F.R. 404.1520(a)(4)(i)–(iv).  In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.  This last step involves a determination of whether the claimant is capable of making an adjustment to other work.  20 C.F.R. 404.1520(a)(4)(v). If the ALJ chooses to use a vocational expert to make this determination, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).

The use of the Medical-Vocational Guidelines at step five is proper "where they *completely and accurately* represent a claimant's limitations" and the claimant can "perform the *full* range of jobs in a general category." *Tackett v. Apfel*, 1810 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original). Although "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*. at 1102.

Plaintiff contends that he was wrongly denied benefits because the ALJ (i) failed to properly weigh all medical opinions; (ii) failed to properly credit plaintiff's subjective complaints; (iii) improperly assessed his residual functional capacity; (iv) improperly concluded that he could do his past relevant work; and (v) improperly used grids at step five to find that plaintiff was not disabled.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

In his decision, the ALJ found at step one of the sequential evaluation process that plaintiff did not engage in substantial gainful activity during the alleged closed period of disability. In January 2006, plaintiff returned to work as a substance abuse counselor (AR 18). At step two, the ALJ found that the medical evidence established that the claimant had severe chronic neck, back, and joint pain probably due to degenerative arthritis, and the evidence also established that he was "status post radiation therapy for prostate cancer" (*ibid*.). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in the Social Security regulations. At step four, the ALJ determined that plaintiff had the residual functional capacity to perform light to medium work not requiring bending or stooping repeatedly, which would not have precluded him from doing past relevant work as he performed it (*id*. at 19). Even though plaintiff's claim failed at step four, the ALJ found in the alternative that, at step five, plaintiff was also capable of performing other jobs which existed in significant number in the national economy within the framework of Social Security regulations and consistent with testimony from a vocational expert (*ibid*.).

Accordingly, the ALJ concluded that plaintiff was not under a disability as defined in the Social Security Act during the alleged period of disability (*ibid.*).

### 3. THE ALJ PROPERLY WEIGHED ALL MEDICAL OPINIONS.

The ALJ properly gave more weight to the opinions of Dr. Pon, a consultative medical examiner, and Dr. Van Der Reis, a testifying medical expert, than to the opinion of plaintiff's treating physician. "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of Dr. Daniels, plaintiff's treating physician, was contradicted by the opinion of Dr. Pon. Dr. Pon's opinion was based on independent clinical findings that differed from the treating physician. Dr. Pon conducted a physical examination of plaintiff on August 12, 2005, and he reviewed plaintiff's medical records. Dr. Pon found that plaintiff

> should be able to stand and/or walk for a total of 6 hours during an 8-hour workday. He should be able to sit for a total of 6 hours during an 8-hour work day. Stooping should be limited to occasionally. There is no restriction in climbing stairs, ladders, or crawling. There is no restriction in performing pushing and pulling right arm/hand control. In spite of his complaint of left shoulder pain, he should still be able to perform pushing left arm/hand control on a frequent basis. There is no restriction in performing bilateral pushing leg/foot control. He should be able to lift and carry frequently 25 lbs. and occasionally 50 lbs. There is no limitation in reaching using his right shoulder. Reaching using his left shoulder should be limited to occasionally. There were some symptomatic limitations in active ROM of his left shoulder as described. There is no limitation in his ability to perform gross and fine manipulative tasks with both hands.

(AR 272).

Dr. Daniels, on the other hand, indicated in an evaluation form on October 26, 2005, that plaintiff had the following limitations:

- Occasionally lift/carry less than 10 lbs.
- Standing/walking less than 2 hours in an 8-hour workday.
- Must periodically alternate sitting and standing to relieve pain or discomfort.

9

1 • Limited pushing and pulling in upper extremities.
2 • Occasionally climbing, balancing, kneeling, and crouching.
3 • Never crawling or stooping.
4 • Limited reaching in all directions (including overhead).
5 • Limited handling (gross manipulation).
6 • Limited feeling (skin receptors).

(*id*. at 302–05). It was within the province of the ALJ to resolve the conflicting opinions and find that Dr. Pon's opinion provided substantial evidence. Dr. Pon's opinion was based on medical findings from his independent examination and review of medical records. Dr. Daniels' opinion, as discussed in more detail below, did not provide *any* medical findings to support his opinion.

Furthermore, Dr. Pon's opinion was supported by the testimony of Dr. Van Der Reis, whose opinion may also serve as substantial evidence. "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ, here, set forth such a summary and evaluation and, accordingly, made his findings (*id*. at 16–19). The ALJ has met his burden.

**A.     The Opinion of Dr. Daniels.**

Plaintiff contends that the ALJ erred in according no weight to the opinion of Dr. Daniels, a treating physician. Dr. Daniels indicted in an evaluation form that plaintiff had extensive limitations (*id*. at 17, 302–05). Dr. Daniels, however, did not provide *any* medical findings to support his conclusions even though the form specifically called for such findings at least four times. Instead, Dr. Daniels merely checked boxes that indicated plaintiff's alleged limitations. The ALJ properly gave no weight to his opinion. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. BARNHART*, 278 F.3d

947, 957 (9th Cir. 2002). The ALJ rejected the doctor's opinion on the ground that it was "not supported by any objective medical findings and is thus not accorded any significant probative weight" (*id*. at 17). Rejection of the opinion was proper because it was not linked to objective medical findings, and the ALJ properly set forth a valid reason for doing so.

Plaintiff contends that the opinion of Dr. Daniels as to the severity of plaintiff's impairments should have been given controlling weight under Section 416.927(d)(2), which generally gives controlling weight to treating sources. A treating sources opinion will get controlling weight, however, "when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 416.927(d)(2). *No* support was given for Dr. Daniels' opinion and, therefore, it cannot be given controlling weight.

Plaintiff next argues that the ALJ erred by not considering factors enumerated in Section 416.927(d)(2) to determine what weight to give Dr. Daniel's opinion if not controlling weight. Those factors include (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship; (iii) amount of medical evidence and findings presented to support the opinion; and (iv) consistency with the record as a whole. Plaintiff argues that under these factors it was error for the ALJ to give the opinion of Dr. Daniels no weight. The only factor plaintiff takes issue with is (iv). Plaintiff contends that the ALJ did not evaluate Dr. Daniels' opinion against the record as a whole. That is not correct. The ALJ stated that "Dr. Pon's evaluation is supported by detailed clinical findings and is thus not found to be rebutted by . . . an October 2005 residual functional capacity assessment by Dr. Daniels of the UCSF Medical Center which described severe physical restrictions but which is not supported by any objective medical findings and is thus not accorded any significant probative weight" (*id*. at 17). Clearly, the ALJ did consider Dr. Daniel's opinion against the record.

Plaintiff, however, takes issue with the ALJ's conclusion that Dr. Daniel's opinion was not supported by "any objective medical findings." Plaintiff in his reply brief points to several documents in the record which discuss his radiation treatment, urological treatment,

11

1   and his back, neck, and shoulder pains.  These records, plaintiff argues, provided "objective
2   medical findings" to support Dr. Daniels' opinion.  Notably, none of these records expressly
3   links plaintiff's medical condition or treatment with his alleged physical limitations.
4   These records, therefore, cannot provide objective medical support for Dr. Daniels' opinion.
5   Also, plaintiff cites to medical records that post-dated the doctor's opinion and, therefore,
6   could not have provided objective medical support.

7   Plaintiff next argues that the ALJ was under a duty to contact Dr. Daniels to get further
8   explanation of his opinion per Section 404.1512(e)(1).  Despite plaintiff's argument to the
9   contrary, that section does not set forth an absolute requirement for an ALJ to contact a treating
10  source.  "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or
11  insufficient for the ALJ to make a disability determination."  *Bayliss v. BARNHART*, 427 F.3d
12  1211, 1217 (9th Cir. 2005).  If there was support in the record for the ALJ to make a
13  determination regarding the plaintiff's disability, the ALJ did not have a duty to recontact
14  plaintiff's doctor.  *Ibid*.  There was such support in the record.  As discussed earlier, the ALJ
15  relied on the findings of Dr. Pon.  He also relied on the testimony of medical expert Dr. Van
16  Der Reis and that of vocational expert Ms. Rynd.

**B.   The Physical Therapist's Opinion and the Opinions  
Of Physician Assistants Ted Deleon and Tiffany Williams.**

Plaintiff contends that it was error of the ALJ to accord little if any weight to the
opinions of a physical therapist and two physician assistants.  Section 404.1513(d) provides
that an ALJ *may* use evidence from physician assistants and therapists to show the severity of
a claimant's impairment.  The ALJ was *not required* to evaluate such records.  It was proper
for the ALJ to not specifically address those records.  In June and July 2004, physician assistant
Tiffany Williams indicated that plaintiff had "no complaints."  She did, however, indicate
that plaintiff had numbness in his left hand.  But this does not appear to be an "opinion" of the
physician assistant, but rather a notation of plaintiff's self-reported symptoms (*id*. at 105).
As for Ted Deleon's notes, they pre-dated the plaintiff's alleged disability period by almost
four years, and they also consisted of self-reported symptoms, not opinion (*id.* at 205).

12

It was also proper for the ALJ to not specifically address the physical therapist's screening evaluation. The evaluation was conducted on January 3, 2006, *after* plaintiff's alleged disability period. It, too, contained self-reported symptoms. Although the evaluation stated that plaintiff's rehabilitation potential was "good," which might have had some probative value, the ALJ was not required to discuss every piece of evidence in the record. It is only necessary for the ALJ to discuss why significant probative evidence had been rejected. *Vincent v. Heckler*, 739 F. 2d 1393, 1394–95 (9th Cir. 1984). In light of all the other evidence in the record, the evaluation and the notations from the physical therapist and the physician assistants were not significant probative evidence, and it was not error for the ALJ to not discuss them.

### C. The Opinion of Dr. John Tysell.

Plaintiff contends that the ALJ erred by not providing specific reasons for granting no weight to the opinion of Dr. John Tysell. Dr. Tysell provided a form assessment of plaintiff's physical residual functional capacity on September 9, 2005, as a state agency medical consultant. The ALJ found that the opinion of Dr. Pon was not rebutted by the opinion of non-examining state agency medical consultants (AR 18). The two opinions differ slightly in regard to plaintiff's limitations in his upper extremities. Dr. Tysell's opinion indicated that plaintiff had push and pull limitations in his upper extremities and that he had limited reaching, including overhead. Dr. Pon's opinion stated that "[i]n spite of complaint of left shoulder pain, he should still be able to perform pushing and pulling left arm/hand control on a frequent basis. Reaching using his left shoulder should be limited to occasionally" (*id*. at 272). Dr. Pon's opinion is not inconsistent with Dr. Tysell's. They are substantially similar in all other regards, including plaintiff's limitations on lifting, sitting, and standing. The ALJ was not required to elaborate on its conclusion that Dr. Pon's opinion was not rebutted by Tysell's because Tysell's opinion largely *hurts* plaintiff's case, rather than helps it. Section 416.927(d) does not require more.

13

### D. Other Medical Opinions.

Plaintiff contends that the ALJ ignored and gave no weight to the medical diagnoses by Dr. Pham, Dr. Odeluga, Dr. Spack, Dr. Akanno, and Dr. Nguyen. Plaintiff argues that this constitutes legal error and requires remand. Plaintiff is incorrect that the ALJ ignored these diagnoses and did not factor them into his decision. The ALJ clearly reviewed all of plaintiff's medical records from his time in prison. The ALJ found that the prison medical records described "ongoing care for a variety of relatively minor complaints" (*id*. at 16). The ALJ also noted plaintiff's radiation treatment and subsequent recovery. The ALJ cited to exhibits 1F and 2F in his evaluation of the evidence, which included the opinions and diagnoses of the above-mentioned doctors. Plaintiff's argument has no merit. The ALJ *did not* ignore this evidence.

Furthermore, "[a]n ALJ need not give controlling weight to the opinion of a treating physician. Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1194–95 (9th Cir. 2004). The ALJ, here, gave minimal weight to plaintiff's treating physicians while he was in prison because he was treated for "relatively minor complaints," and he had recovered from treatment. The ALJ did not err by doing so. *Id*. at 1195. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), cited by plaintiff, is not to the contrary.

Plaintiff's argument that the ALJ improperly failed to consider the opinions of Dr. Burch and Dr. Konety is equally unavailing. Plaintiff argues that those opinions provided the "objective medical evidence" to support Dr. Daniels' opinion that plaintiff had extreme limitations in 2005, and, therefore, they should have been discussed by the ALJ. The ALJ was not required to discuss every piece of evidence in the record. It is only necessary for the ALJ to discuss why significant probative evidence had been rejected. *Vincent*, 739 F. 2d at 1394–95. Plaintiff asserts that Dr. Burch's opinion of June 5, 2006, "gives retrospective support" to

Dr. Daniels' opinion that plaintiff had limited lifting abilities. While the opinion noted that plaintiff had "mild weakness" in his "wrist extensors and flexors of the left hand which would go along with the findings seen on cervical MRI with foraminal narrowing at C5-C6 and C6-C7," there is no attempt to link this finding to plaintiff's past alleged limitations, as opined by Dr. Daniels. Thus, the opinion is not "significant probative evidence" that the ALJ needed to discuss.

Similarly, the opinion of Dr. Konety lacked significant probative value. Plaintiff attempts to link Dr. Konety's diagnosis of erectile dysfunction and reduction in control over the release of urine to his alleged fatigue. But, Dr. Konety's opinion does not make this link, and there's nothing that plaintiff points to in the record which would require the ALJ to make this link either. Plaintiff also attempts to link a 2007 diagnosis of pneumonia to his alleged fatigue during his disability period. The ALJ addressed the pneumonia diagnosis in his evaluation and apparently found it insubstantial. There's no reason to disturb that finding.

### 4. THE ALJ PROPERLY WEIGHED PLAINTIFF'S SUBJECTIVE COMPLAINTS.

The ALJ found that "the alleged 'disabling' severity of the claimant's subjective complaints [was] not related to the objective medical and other evidence." Plaintiff contends that this discounting of his subjective complaints was improper. In deciding whether to accept a claimant's subjective complaints, the ALJ must assess whether: (i) the claimant produced objective medical evidence of impairments and (ii) such impairments *could reasonably be expected* to produce some degree of symptom. *Smolen*, 80 F.3d at 1281–82 (emphasis in original). The claimant need not produce objective medical evidence of the pain itself, or the severity of it. *Id*. at 1282. If the claimant produces objective medical evidence and there is no evidence of malingering, the ALJ can reject claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so. *Id*. at 1281. The ALJ may not reject subjective symptom testimony simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged by the claimant. *Ibid*.

Here, plaintiff provided objective medical evidence of his impairments concerning his neck, shoulders, and back. The next question is whether the impairments *could reasonably be*

1  *expected* to produce some degree of symptom.  The ALJ himself acknowledged that plaintiff
2  had "severe chronic neck, back, and joint pains probably due to degenerative arthritis, and
3  status post radiation therapy for prostate cancer" (AR 18).  Clearly, plaintiff's impairment as
4  to his neck and back could reasonably be expected to produce *some* degree of symptom.
5  Likewise, plaintiff's shoulder impairment meets the second part of the test.  His medical
6  records indicated long-term shoulder problems dating back to at least 2001 (*id*. at 263).
7  This impairment could reasonably be expected to produce some degree of symptom.

8  Plaintiff's testimony concerning his fatigue, however, is a different matter.  He provided
9  records concerning his prostate cancer and radiation treatment.  But those records indicated
10 that he had recovered without incident since the treatment.  Plaintiff points to *no* records that
11 indicate objective medical evidence of an impairment due to fatigue.  In fact, plaintiff testified
12 that he had been "more or less" stable since he had the radiation treatment (*id*. at 395).
13 Plaintiff argues that his treatment for erectile dysfunction and reduced loss of urination control
14 provided the necessary evidence.  But, none of those records make a link between the treatment
15 and plaintiff's alleged fatigue.  It was proper, therefore, for the ALJ to not give weight to
16 plaintiff's subjective complaints of fatigue without further explanation.

17 Further explanation, however, of the ALJ's decision to not give weight to plaintiff's
18 complaints about his inability to lift more than five to ten pounds merited greater attention.
19 Plaintiff contends that the ALJ provided no reasons for rejecting plaintiff's testimony.
20 Plaintiff is incorrect.  The ALJ stated in his findings that his conclusion was "pursuant" to
21 his evaluation of the evidence.  The evaluation clearly and fully explained the ALJ's reasons
22 for giving greater weight to the opinions of Dr. Pon and Dr. Van Der Reis as to plaintiff's
23 alleged disabling symptoms.  As was discussed earlier, the ALJ properly gave their opinions
24 greater weight.  The ALJ's discounting of plaintiff's subjective complaints concerning his
25 neck, shoulder, and back pains was not improper.

26 **5.   THE ALJ PROPERLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY.**

28 The ALJ found that plaintiff had a residual functional capacity to perform light to medium work not requiring bending or stooping repeatedly.  Plaintiff contends that the ALJ

16

1  erred in making this finding because he did not conduct a function-by-function analysis as per
2  SSR 96-8p, which states that "the RFC assessment must first identify the individual's functional
3  limitations or restrictions and assess his or her work-related abilities on a function-by-function
4  basis."  A function-by-function analysis, however is not required in every case.  "Preparing a
5  function-by-function analysis for medical conditions or impairments that the ALJ found neither
6  credible nor supported by the record is unnecessary."  *Bayliss,* 427 F.3d at 1217.  The ALJ
7  made his RFC assessment based on the assessments of Dr. Pon and Dr. Van Der Reis which,
8  as previously discussed, were properly found as substantial evidence.  He also based his RFC
9  assessment on the testimony of Ms. Rynd, the vocational expert.  The ALJ properly assessed
10 plaintiff's residual functional capacity.

### 6. THE ALJ'S STEP-FOUR DETERMINATION WAS PROPER.

12 Plaintiff contends that the ALJ erred in his step-four determination for two reasons.
13 *First*, plaintiff asserts that the ALJ did not determine whether plaintiff could work on a regular
14 and continuing basis.  *Second*, plaintiff asserts that the ALJ did not determine the functional
15 demands of plaintiff's past job or an equivalent job.  The ALJ found that plaintiff "was not
16 precluded by medically determinable impairments from doing past relevant work as he
17 performed it" (AR 19).  This was not erroneous.  The ALJ clearly set forth his reasons for his
18 step-four determination.  The ALJ cited to the medical opinions of Dr. Pon, Dr. Van Der Reis,
19 to the testimony of Ms. Rynd, and to plaintiff's medical record.  His step-four analysis was
20 supported by substantial evidence.  Ms. Rynd testified that plaintiff could perform his past
21 work as a supervising garden worker (*id*. at 402).  Nothing in the record indicates that she
22 meant anything other than plaintiff could perform the work on a regular and consistent basis.
23 Also, plaintiff described his past work, setting forth the functional demands.  This was clearly
24 part of the record on which the ALJ relied in making his step-four determination.

25 Also, the ALJ properly limited the vocational expert's testimony to answering
26 hypotheticals that were only based on a light-to-medium work load.  Plaintiff's representative
27 attempted to ask the vocational expert two hypotheticals, one based on an "occasional reaching"
28 limitation, the other on a "sedentary" level of work activity.  The ALJ cut off the questions,

17

stating that he wasn't going to permit the questions because the evidence already established that plaintiff could do light-to-medium work (*id*. at 404). Because the finding of plaintiff's ability to do light-to-medium work was supported by substantial evidence in the record, the restrictions on the hypotheticals were proper. *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989).

### 7. THE ALJ PROPERLY USED GRIDS AT STEP FIVE AS AN ALTERNATIVE GROUND TO DENY BENEFITS TO FIND THAT PLAINTIFF WAS NOT DISABLED.

Even though the ALJ found that plaintiff was able to perform his past work, the ALJ found on an alternative ground that plaintiff was not disabled because he was able to perform other jobs which existed in significant number in the national economy under the Medical-Vocational Guidelines ("grids"). Plaintiff contends that this finding was erroneous because the ALJ applied grids even though he had colorable non-exertional impairments, precluding the use of grids. Plaintiff asserts that his loss of urine control is a "nonexertional" impairment. He did not make this argument to the ALJ. Also, plaintiff cites no authority for this proposition. Even if loss of urine control was a nonexertional impairment, the ALJ's use of grids would not have been improper. SSR 83-12.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Plaintiff's motion for attorneys fees is also **DENIED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: December 19, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

18